USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/12/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

UNITED STATES OF AMERICA                                       :
                                                               :
           -against-                                           :
                                                               :
                                                               :
AAMIR WAHAB, WILLIAM WASHINGTON,                               :
KEYON DOOLING, ANTHONY ALLEN,                                  :          21-CR-603 (VEC)
DESIREE ALLEN, SHANNON BROWN,                                  :
WILLIAM BYNUM, RONALD GLEN DAVIS,                              :          OPINION AND ORDER
DARIUS MILES, MILTON PALACIO, RUBEN                            :
PATTERSON, SEBASTIAN TELFAIR and                               :
SOPHIA CHAVEZ,                                                 :
                                                               :
                                 Defendants.                   :

-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       The remaining Defendants in this case, except for Aamir Wahab and William

Washington, have moved to dismiss the Superseding Indictment (S7) ("the Indictment") and to

compel the Government to produce a bill of particulars, to fulfill its disclosure obligations

pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150

(1972), and to produce grand jury materials for review.[1]  For the reasons stated below, the

pretrial motions are DENIED.

## BACKGROUND

       The National Basketball Association ("NBA") offers a Health and Welfare Benefit Plan

("the Plan") that is funded by the NBA for the benefit of basketball players who have played for

---

[1]       *See* Allen Mot., Dkt. 543; Miles Mot., Dkt. 546; Brown Mot., Dkt. 549.  Defendants William Bynum,
Sophia Chavez, Darius Miles, Sebastian Telfair, Anthony Allen, and Ronald Glen Davis joined Mr. Brown's motion
to dismiss.  Brown Mem., Dkt. 550 at 1.  Defendants Anthony Allen, Shannon Brown, William Bynum, Ronald
Glen Davis, Sebastian Telfair, and Sophia Chavez joined Mr. Miles's motion to dismiss.  Miles Mem., Dkt. 547 at 1.
Defendant Desiree Allen also joined her husband Anthony Allen's motion.  D. Allen Mot., Dkts. 545, 601.

teams in the league and their families.  Superseding Indictment (S7), Dkt. 497 ¶¶ 1, 7.

According to the Indictment, the Plan "is a 'health care benefit program,' as defined by" 18

U.S.C. § 24(b).  *Id.* ¶ 7.  It provides each Plan participant with a health reimbursement account

(HRA), and it invests the corpus of Plan participants' HRAs collectively.  *Id.*  If Plan

participants, their spouses, or their dependents incur health care costs, they may submit claims

for reimbursement to the Plan or use a Plan-issued debit card to pay for eligible medical

expenses.  *Id.* ¶¶ 7, 11–13.  Reimbursements from the Plan for health care expenses are not

taxable income to Plan participants.  *Id.* ¶ 8.

The Indictment charges the named Defendants with conspiracy to commit health care

fraud and wire fraud in violation of 18 U.S.C. §§ 1343, 1347, 1349 (Count One) and conspiracy

to make false statements relating to health care matters in violation of 18 U.S.C. § 371, 1035

(Count Two).  The majority of the Defendants named in the Indictment formerly played

basketball for teams in the NBA and allegedly submitted false invoices seeking reimbursement

for health care expenses that were never actually incurred.  *Id.* ¶ 1; Miles Mem., Dkt. 547 at 1.

Defendants Washington, Wahab, and Chavez are health care providers who, as part of the

scheme, allegedly provided false invoices to former NBA players; Ms. Chavez is an employee of

Dr. Wahab's dental practice.  S7 ¶¶ 3, 17.

The Board of Trustees of the Plan retroactively denied claims submitted by Defendants

Anthony Allen, Sebastian Telfair, Ronald Glen Davis, and Shannon Brown.  *Id.* ¶¶ 9, 36, 37.

Messrs. Telfair, Allen, and Brown were asked to repay funds received pursuant to fraudulently-

submitted claims.  *Id.* ¶ 36.  Mr. Allen subsequently repaid $420,075 to the Plan through a

repayment plan; Messrs. Brown and Telfair did not repay the Plan.  *Id.*

**DISCUSSION**

I.     **Count One of the Indictment Properly Alleges that the Defendants Conspired to Commit Wire Fraud and Health Care Fraud**

  **A.  Legal Standard**

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." "An indictment is sufficient if it 'first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). "To satisfy the pleading requirements of Rule 7(c)(1), an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Stringer*, 730 F.3d at 124 (cleaned up).

"Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial[,] the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *United States v. Perez*, 575 F.3d 164, 166–67 (2d Cir. 2009) (quoting *United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998)). Instead, the indictment's allegations are taken as true, and the Court reads the indictment in its entirety. *See United States v. Hernandez*, 980 F.2d 868, 871 (2d Cir. 1992); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

  **B.  Count One of the Indictment Adequately Alleges that Defendants Conspired to Commit Wire Fraud**

To allege conspiracy to commit wire fraud, the Government must allege that the defendant conspired to obtain the property of another. *See United States v. Males*, 459 F.3d 154,

158–60 (2d Cir. 2006) (describing elements of wire fraud).  Defendants argue that Count One of the Indictment should be dismissed for failing to allege that, in submitting false invoices to the Plan, the Defendants sought to obtain property belonging to another.  Miles Mem. at 8; Allen Mem., Dkt. 544 at 9–10.[2]

### 1. The Indictment Satisfies the Requirements of Federal Rule of Criminal Procedure 7(c)

When evaluating the sufficiency of an indictment on a motion to dismiss, the Court "should not look beyond the face of the indictment." *United States v. Greenberg*, No. 21-CR-92, 2022 WL 827304, at *6 (S.D.N.Y. Mar. 9, 2022) (internal quotation omitted); *see also Alfonso*, 143 F.3d 772 at 776.[3]  If the Indictment meets the threshold of minimum sufficiency, the Court may look to the record, including the discovery disclosed to the defendant, to determine "whether the defendant is protected from double jeopardy in a subsequent prosecution and whether the defendant has had an adequate opportunity to prepare his defense." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999).  If these requirements are met, the Court may only dismiss the Indictment "for lack of specificity" upon a showing of prejudice.  *Stringer*, 730 F.3d at 124 (internal quotation omitted).

The Indictment is certainly "minimally sufficient" to allege conspiracy to commit wire fraud.  *Walsh*, 194 F.3d at 45.  The Indictment clearly alleges that the Plan possessed and held

---

[2]     Defendants make the same argument with reference to the other object of the conspiracy: health care fraud. Health care fraud, like wire fraud, requires the Government to allege and prove that the defendant fraudulently sought to obtain property of another.  *See* Miles Mem. at 8; Allen Mem., Dkt. 544 at 7, 9–10.  Their argument relative to the health care fraud objective is rejected, among other reasons, for the same reasons their argument vis-à-vis wire fraud is rejected.  *See infra* section I.C, pp. 8–12.

[3]     The two cases that the Defendants cite to the contrary are unpersuasive.  *See* Miles Mem. at 8.  In *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000), the Court looked to other statutes, regulations, and regulatory guidance in order to interpret the elements of the offense of the applicable tax statute.  *Id*. at 90.  In *United States v. DeLillo*, 421 F. Supp. 1012 (E.D.N.Y. 1976) — a nearly fifty-years-old, nonbinding opinion — the district court stated, in a footnote and without explanation, that it treated the contract referenced in the indictment "as part of the indictment" for the purpose of the opinion.  *Id*. at 1013 n.2.

the HRA-related funds.  *See, e.g.*, S7 ¶¶ 7–13; *see also* Miles Reply, Dkt. 643 at 4 n.2 ("That the

Plan had 'actual possession of the funds' and that the Trust Agreement granted bare legal title to

the Trustees are facts not in dispute.").  That is enough to satisfy the requirement that the

Indictment allege that the Defendants conspired fraudulently to obtain property belonging to

another.  *See, e.g.*, *United States v. Bruchausen*, 977 F.2d 464, 467 (9th Cir. 1992) ("The wire

fraud statute is not limited to possessory interests . . . .").  The Indictment describes the Plan's

structure and explains that "HRA-related assets [are] held in the Plan's trust."  S7 ¶ 7.  These

allegations are sufficient to put the Defendants on notice that they are being charged with

fraudulently obtaining funds that belonged to the Plan and to protect the Defendants from double

jeopardy as to similar charges in the future.

     Furthermore, "the record as a whole" contains ample information provided to the

Defendants by the Government months ago, as well as in its opposition briefing, that the

Government's theory is that the funds at issue belonged to Plan.  *Walsh*, 194 F.3d at 45; *see also*

Gov. Aug. 1, 2022, Letter, Dkt. 444 at 1 ("Miles's claim that the Plan's money belonged to Miles

is wrong."); Gov. Opp., Dkt. 611 at 18 ("Plainly, the Plan possesses and controls the funds — it

is a victim of the defendants' fraudulent scheme.").  These statements make it abundantly clear

that the Government's position is that the Plan has an identifiable property interest in the Plan's

funds and was victimized by Defendants' conduct.  In combination with the Indictment's

statements regarding dates on which the fraudulent claims were submitted, the Indictment more

than guards against the possibility that the Defendants will be prejudiced in their ability to

proceed at trial or to guard against double jeopardy.

### 2.    Plan Funds Were Not, as a Matter of Law, Defendants' Property

     Putting aside the adequacy of the allegations in the Indictment, Defendants argue that

Count One must be dismissed because, as a matter of law, the Defendants schemed to obtain

funds that were not the "property of another" but were, in fact, their own property.  Miles Mem. at 14; *id*. at 14 n.6.  Their argument is wholly unsupported by applicable law.

According to the IRS, "HRAs are not the property of the employee."  Health Reimbursement Arrangements and Other Account-Based Group Health Plans, 83 Fed. Reg. 54420, 54450 (Oct. 29, 2018); *see also* Health Reimbursement Arrangements and Other Account-Based Group Health Plans, 84 Fed. Reg. 28888, 28971 (June 20, 2019).  Moreover, Defendants have cited no precedent, and research has uncovered none, in which a court has held that the *res* of a trust is property of the beneficiary of the trust in the context of the beneficiary defrauding the trustee to gain access to the *res* in violation of the terms of the trust.  *Cf. Berman, Tr. for Est. of Michael S. Goldberg, LLC v. LaBonte*, 622 B.R. 503, 527–28 (D. Conn. 2020) (trustee's right to claw back funds is a cognizable property interest pursuant to 18 U.S.C. § 1343).  Instead, Defendants cite several cases holding that "property" is narrowly construed for purposes of the wire fraud statute.  *See* Miles Mem. at 9–11.  Those cases, however, generally involved "'intangible rights' unrelated to money or property."  *Cleveland v. United States*, 531 U.S. 12, 18 (2000) (collecting cases); *see also Pasquantino v. United States*, 544 U.S. 349, 356 (2005) (holding that the wire fraud statute deals with fraud of "[v]aluable entitlements" that "are 'property' as that term is ordinarily employed").  The Plan, in contrast, grants participants limited rights to the funds held by the Plan; specifically, the funds can be used by Plan participants solely to pay for qualified health care services used by participants and their families.  *See* Allen Mem. Ex C, Dkt. 708 ("Trust Agreement") ¶ 7.1; *see also* Trzaskoma Decl. Ex. A ("Plan Summary"), Dkt. 548 at 9.

The Plan documents make clear that "[t]he assets of the Plan are held in trust and are invested by investment managers appointed by the Board of Trustees."  Plan Summary at 9.

While the Defendants place great weight on the fact that the Plan describes the process of becoming eligible for reimbursement from the Plan as "vesting," *see* Miles Mem. at 15–16, vesting does not endow Plan participants with property rights in the Plan's funds.  Vesting means only that the "Player . . . [is] eligible to apply for reimbursement of health related expenses . . . ." Plan Summary at 7.  Critically, Plan participants' right to funds contained in "their" HRAs[4] is contingent upon the Plan administrators' determination that the funds will be used toward a qualifying expense.  Plan participants are required to forfeit any funds obtained for non-qualifying expenses.  *See id.* at 13.  Put differently, "vesting" does not mean that Plan participants obtain property rights in their aliquot share of the funds in the Plan.  The Plan documents make clear that, regardless of "vesting," Plan participants lack many rights that are normal attributes to ownership: they cannot decide how the funds will be invested; they cannot decide to withdraw the funds for non-health related reasons; they cannot pledge or hypothecate the funds; and they cannot bequeath the funds on death.  In short, Plan participants do not have "full title" to funds in "their" HRA; their "right" to HRA funds is conditioned upon the expense they want reimbursed qualifying for reimbursement.

Defendants' argument that the Plan's trustees do not have a property interest in the Plan funds is similarly unavailing.  *See* Miles Mem. at 17.  The Trust Agreement itself makes clear that Defendants' argument is without merit.  Section 4.2 of the Trust Agreement provides: "Title to all the monies paid into and/or due and owing to the trust shall be vested in and remain exclusively in the Trustees . . . ."

---

[4]      The Indictment states that Plan funds are held in individual "accounts" for each Plan participant, S7 ¶ 7, but the Government's opposition brief clarifies that participants accounts are "notional;" the funds are not held in individual accounts, Gov. Opp., Dkt. 611 at 5.

Defendants also rely on statements made by Plan representatives that purport to establish the Plan's view that it was not a "victim" of Defendants' allegedly fraudulent conduct. *See, e.g.*, Miles Mem. at 20 n.8. From that, the Defendants argue that the Plan was not harmed and, therefore, the Defendants committed no crime. *See, e.g.*, Allen Mem. at 3–4. The evidentiary value, if any, of a statement made by the representative of the Plan is a matter for determination at trial. *See Alfonso*, 143 F.3d at 776–77 (whether the Government can meet its burden of satisfying an element of the offense described in the indictment is inappropriate for pretrial determination where the Government has not made a full proper of the evidence to be presented at trial); *United States v. Patel*, No. 21-CR-12, 2022 WL 110842, at *3 (W.D. Ohio Jan. 12, 2022) (the relationship between the trustee and assets is a factual question for trial). For now, the Court rules only that (a) Defendants' argument that, as a matter of law, the funds in the Plan are the property of its various participants is meritless and (b) the Indictment adequately alleges conspiracy to commit wire fraud and health care fraud.[5]

### C. Count One of the Indictment Adequately Alleges that Defendants Conspired to Commit Health Care Fraud

Defendants also argue that Count One should be dismissed because it fails properly to allege the elements of health care fraud. *See* Allen Mem. at 5; Miles Mem. at 24–25. The Indictment "track[s] the language of the statute charged and state[s] the time and place (in approximate terms) of the alleged crime." *Stringer*, 730 F.3d at 124 (cleaned up). Because it

---

[5]     Mr. Allen further argues that Count One should be dismissed as to him because he repaid the Plan funds that were improperly withdrawn following the Plan's request for repayment. *See* Allen. Mem. at 5. His argument seems to be that because he repaid the ill-gotten funds, the Plan was not harmed by his conduct, and the Indictment fails to allege that Mr. Allen intended to cause the Plan financial loss. *See id.* at 5–6. The fact that Mr. Allen may have changed his mind after the Plan detected a pattern of suspicious conduct is irrelevant at this stage; the Government may be able to prove both harm and intent even though Mr. Allen repaid the Plan. *See United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998) (courts may not dismiss an indictment based on factual uncertainty). Furthermore, it is well-settled law that a defendant's good-faith intention to repay funds fraudulently obtained is not a defense to allegations that he intended to cause the victim financial loss. *See United States v. Lowe*, 664 F. App'x 38, 43 (2d Cir. 2016) (quoting *United States v. Binday*, 804 F.3d 358, 570 (2d Cir. 2015)).

satisfies the requirements of Federal Rule of Criminal Procedure 7(c), it is not subject to dismissal.  The Indictment provides sufficient information to put the Defendants on notice that they are being charged with defrauding a health care benefit program and to protect them from double jeopardy as to similar charges in the future.  *See United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008).

As they argued vis-à-vis the wire fraud object of the Count One conspiracy, Defendants argue that there also cannot be an unlawful conspiracy to commit health care fraud because Plan funds were the property of the Defendants.  *See* Miles Mem. at 11–13.  As unconvincing as these arguments are in the context of wire fraud, they are even less convincing in the context of health care fraud.

The health care fraud statute criminalizes schemes "to obtain, by means of false or fraudulent pretenses . . . property owned by, *or under the custody or control of*, any health care benefit program."  18 U.S.C. § 1347(a)(2) (emphasis added).  Thus, to prove health care fraud, the Government is not required to prove that the funds that were the object of the fraud belonged to the Plan; it need only prove that the Plan was the custodian of the funds.  *See Loughrin v. United States*, 573 U.S. 351, 357–60 (2014) (analyzing analogous language in the bank fraud statute, codified at 18 U.S.C. § 1344(2)); *see also United States v. Mermelstein*, 487 F. Supp. 2d 242, 253 n.2 (E.D.N.Y. 2007) ("Because of the similarity in the wording of the bank, major, and health care fraud statutes, courts rely upon the more ample case law construing the former two statutes when interpreting 18 U.S.C. § 1347.") (collecting cases).  The Indictment explicitly alleges, and the Plan clearly explains, that the funds obtained by Defendants were under the Plan's control.  *See* S7 ¶ 7 ("HRA-related assets [are] held in the Plan's trust."); Plan Summary

at 16 ("The Board of Trustees is responsible . . . for controlling and managing the operation and administration of the Plan . . . .") .

Defendants also argue that the health care fraud object of the conspiracy charged in Count One must be dismissed because, as a matter of law, the Plan is not a "health care benefit program." Miles Mem. at 24; Allen Mem. at 11. The term "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b); *see also* S7 ¶ 7 ("The Plan is a 'health care benefit program,' as defined by Title 18, United States Code, Section 24(b).").

Defendants argue that "[n]othing about the Plan functions like a traditional health care payer engaged in the provision of medical benefits." Miles Mem. at 26. They point to a provision in the tax code that defines "medical benefit" as "a benefit which consists of the providing (directly or through insurance) of medical care." 26 U.S.C. § 419(A)(f)(2). They point to no authority, however, that even remotely suggests that the definition of "medical benefit" from that portion of the tax code should be imported into the criminal code nor to any persuasive rationale why the definition in Title 18 should be narrowed to apply only to programs that "provide medical care, either directly or through insurance." Miles Mem. at 25.

Courts have summarily rejected such a constrained reading of section 24(b) in light of Congress's intent to prohibit health care fraud, broadly defined. *See United States v. Manamela*, 612 F. App'x 151, 156 (3d Cir. 2015) (city contractor engaged in health care fraud by misrepresenting to city officials that it was coordinating health care services for at-risk children); *see also United States v. Lucien*, 347 F.3d 45, 51 (2d Cir. 2003) ("Congress intended for [section

1347] to include within its scope a wide range of conduct so that all forms of health care fraud would be proscribed, regardless of the kind of specific schemes unscrupulous persons may concoct.").  "If Congress had intended to limit § 24(b) to insurers, it certainly could have done so."  *Manamela*, 612 F. App'x at 156 (citing, *inter alia*, *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013)).  The Government's allegations that the Plan provides participants reimbursement for expenses incurred in connection with the receipt of eligible health care services or treatments plainly suffices to establish that the Plan provides a "medical benefit."  18 U.S.C. § 24(b); *see also* S7 ¶¶ 7–13.[6]

Finally, in what can charitably be best described as an attempt at a full-court buzzer-beater, Defendants argue that the Court lacks jurisdiction because the conduct described in the indictment "does not affect interstate commerce."  Miles Mem. at 26.  This is clearly wrong.  Again, it is enough that the Indictment alleges that this statutory requirement is met.  *See Yannotti*, 541 F.3d at 127; S7 ¶¶ 71–72.  The Second Circuit has "interpreted the phrase 'affecting commerce' as being generally demonstrative of Congress' aim to exercise its full power under the Commerce Clause . . . and ha[s] held that a showing of a minimum effect on interstate commerce is sufficient" to satisfy the jurisdictional requirements of sections 24(b) and 1347.  *Lucien*, 78 F. App'x at 144 (citing *United States v. Farrish*, 122 F.3d 146, 148, 149 (2d Cir. 1997)).  One way this requirement may be satisfied is by demonstrating that a health care benefit program reimburses expenses incurred across state lines.  *See id*.  The allegations in the

---

[6]     Mr. Allen's reliance on *United States v. Jones*, 471 F.3d 478 (3d Cir. 2006), for his argument that the Court should define a health care benefit program narrowly because health care fraud "require[s] a scheme to defraud the insurance company," evinces a plain misreading of that case.  Allen Mem. at 14; *see also id.* at 13.  *Jones* held only that "simple theft by an employee" working at a health care facility was not health care fraud because the defendant had not "used false or fraudulent pretenses, representations, or promises to obtain money or property from [the insurance company] in connection with the delivery of, or payment for, health care benefits, items or services."  *Jones*, 471 F.3d at 481.  Indeed, the Third Circuit specifically declined to rule on whether the insurance company from which funds were stolen was a health care benefit program.  *Id.* at 481 n.4.

Indictment satisfy this requirement by alleging that the Plan reimbursed expenses incurred by Defendants in multiple states, including California and Washington.  *See* S7 ¶¶ 17–18, 25–26, 61 (discussing fraudulent invoices reimbursed for services from Dr. Washington, Dr. Wahab, and Sophia Chavez).

In short, Count One of the Indictment adequately alleges a conspiracy to commit health care fraud.  Accordingly, Defendants' motion to dismiss Count One of the Indictment on this ground is denied.

## II.     Counts One and Two Are Not Duplicitous

Defendants argue that the Indictment should be dismissed because, although Count One and Count Two each charge a single conspiracy, they, in fact, charge multiple conspiracies in each count, thereby making the Indictment duplicitous.  Miles Mem. at 29–30.  Defendants argue that although the Indictment purports to allege hub-and-spoke conspiracies, there is no "rim" to connect the spokes.  *Id.* at 30.

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Federal Rule of Criminal Procedure 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby."  *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing *United States v. Murray,* 618 F.2d 892, 896 (2d Cir. 1980); *United States v. Margiotta,* 646 F.2d 729, 733 (2d Cir. 1981)).  The policy considerations underlying courts' wariness of duplicitous charges include:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Id.* (quoting *Margiotta,* 646 F.2d at 733).

"A single conspiracy may be found where there is mutual dependence and assistance among the participants, a common aim or purpose[,] or a permissible inference, from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture." *United States v. Vanwort,* 887 F.2d 375, 383 (2d Cir. 1989) (cleaned up).

The members of a conspiracy are "not required to have conspired directly with" each co-conspirator and need only be conscious of the general nature and extent of the conspiracy. *See United States v. Ohle*, 678 F. Supp. 2d 215, 222 (S.D.N.Y. 2010) (quoting *United States v. Rooney,* 866 F.2d 28, 32 (2d Cir. 1989)). "If the Indictment on its face sufficiently alleges a single conspiracy, the question of whether a single conspiracy or multiple conspiracies exist is a question of fact for the jury." *Id.* (citing *Vanwort,* 887 F.2d at 383). In other words, if a single conspiracy is facially alleged, a motion to dismiss for duplicity should be denied. *United States v. Rajaratnam*, 736 F. Supp. 2d 683, 689 (S.D.N.Y. 2010) (citing *Ohle*, 678 F. Supp. 2d at 222).

In this case, the Indictment alleges that, from approximately 2017 to 2021, the named defendants conspired to commit health care and wire fraud and conspired to make false statements relating to health care matters. *See* S7 ¶¶ 69, 73. The Indictment properly alleges two conspiracies, each involving the same actors, but with different goals. *See Ohle*, 678 F. Supp. 2d at 223 (indictment not duplicitous where it alleged fraudulent conduct "occurred at the same time and had common participants, and that compensation was paid amongst the co-conspirators"). In the current procedural posture of this case, the Government has satisfied its burden of "facially alleg[ing] a single conspiracy" in each count of the Indictment. *Rajaratnam*, 736 F. Supp. 2d at 689.

Defendants' arguments are appropriately made at trial.  *See United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) (whether the indictment alleged single or multiple conspiracies was "a question of fact to be resolved by a properly instructed jury"); *see also Rooney*, 866 F.2d at 32.  Proceeding to trial on this Indictment will "not undermine any of the policies underlying the duplicity doctrine," *Ohle*, 678 F. Supp. 2d at 223, because "much of the risk of prejudice created by a potentially duplicative charge can be cured through proper instructions at trial," *id*. at 223 n.7.  "For that reason, 'courts in this Circuit have repeatedly denied motions to dismiss a count as duplicitous.'"  *Rajaratnam*, 736 F. Supp. 2d at 688 (quoting *Ohle*, 678 F. Supp. 2d at 222).

## III.    The Motion for a Bill of Particulars Is Denied

Defendants also seek a bill of particulars with respect to the identities of any victims, the property interests that those victims have in Plan funds, the identities of unindicted co-conspirators, account information for Defendants' HRAs, and the allegedly false communications.  Brown Mem., Dkt. 550 at 1–2, 13, 14, 17.

The purpose of a bill of particulars is to provide the defendant with sufficient information about the charged conduct to prepare for trial, to avoid surprise, and to prevent double jeopardy.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted); Fed. R. Crim. P. 7(f).  "A bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial."  *United States v. Fruchter*, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000) (citations omitted).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States v. Ojeda*, 412 F. App'x 410, 411 (2d Cir. 2011) (quoting *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004)).

In evaluating whether a defendant has been adequately informed "of the specific acts of which he is accused," *Ojeda*, 412 F. App'x at 411, courts look at the indictment and the materials disclosed in discovery, *see Bortnovsky*, 820 F.2d at 574 ("[I]f the information sought by [the] defendant seeks is provided in the indictment or in some acceptable alternate form, no bill of particulars is required."). "The ultimate test is whether the information sought is necessary, not whether it is helpful." *United States v. Morgan*, 690 F. Supp. 2d 274, 285 (S.D.N.Y. 2010) (citations omitted). It is within the Court's discretion to make that determination and order a bill of particulars if appropriate. *See Bortnovsky*, 820 F.2d at 574 (citing *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir. 1984)).

## A. Disclosure of the Plan Victims and Their Property Interests Are Not Necessary

Defendants have more than sufficient information regarding who has been victimized by Defendants' allegedly fraudulent conduct and the property interests that the victims possess in the Plan funds. Indeed, Defendants acknowledge that they "understand that the [G]overnment views the Plan, at a minimum, as a victim of the crimes charged in the Indictment." Brown Mem. at 10 (citations omitted). Defendants have also acknowledged that they are aware that the Government also views other Plan participants as victims. *See* Miles Oct. 6, 2022, Letter, Dkt. 586 at 1 n.1; *see also* Brown Mem. at 10. While Defendants point to contradictory statements from individuals who may be witnesses, *see* Brown Mem. at 11, statements from third parties do not alter the Government's allegations regarding who it views as a victim of the crimes.

Furthermore, to the extent that Defendants were at all confused regarding who the Government considered to be a victim, or the victims' purported property interests, the Government has extensively described its views on the matter in its opposition to Defendants' pretrial motions. *See, e.g.*, Gov. Opp. at 18 ("[T]he Plan possesses and controls the funds — it is

a victim of the defendants' fraudulent scheme."); *id.* at 42 (stating that the Government does not

intend to pursue a right to control theory); *see also, e.g.*, *United States v. Bonventre*, No. 10-CR-

228, 2013 WL 2303726, at *7 (S.D.NY. May 28, 2013) (clarifying statements in the

Government's opposition brief negated the need for a bill of particulars).

### B.  Identification of the Unindicted Co-Conspirators Is Not Necessary

In considering whether to grant a defendant's request for the identities of known,

unindicted co-conspirators, courts generally look to the following factors:

> (1) the number of co-conspirators; (2) the duration and breadth of
> the alleged conspiracy; (3) whether the Government otherwise has
> provided adequate notice of the particulars; (4) the volume of
> pretrial disclosure; (5) the potential danger to co-conspirators and
> the nature of the alleged criminal conduct; and (6) the potential
> harm to the Government's investigation.

*United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000).

Defendants fail to demonstrate that the names of unidentified co-conspirators are

necessary to prepare their defense.  The alleged conspiracy involves more than twenty named co-

conspirators, *see, e.g.*, S7 ¶ 73; Superseding Information (S5), Dkt. 347 ¶ 1; Superseding

Indictment (S4), Dkt. 290 ¶ 1; Superseding Indictment (S3), Dkt. 221 ¶ 1; Indictment, Dkt. 2 ¶ 1,

and the Indictment alleges the existence of four known, unindicted co-conspirators,  S7 ¶ 22.

The Government has produced "voluminous" discovery in this case.  Order, Dkt. 468 at 3.

Looked at in isolation, those factors may have counseled in favor of ordering the Government to

disclose the names of unindicted co-conspirators.  But, as discussed above, the Government has

more than adequately notified the Defendants of the particulars of the charges.  The Government

has disclosed the names of key conspirators and described at length how the scheme operated.

*See, e.g.*, S7 ¶¶ 14–68.  These are the sorts of "details that have been held to obviate the need for

a bill of particulars." *United States v. Samsonov*, No. 7-CR-1198, 2009 WL 176721, at \*3 (S.D.N.Y. Jan. 23, 2009) (cleaned up).

The Indictment also provides Defendants with information regarding the roles that the unindicted co-conspirators played in the conspiracy and the dates on which they acted. *See* S7 ¶¶ 22, 27, 28, 30, 45, 60. The Government has provided Defendants with details regarding the unindicted co-conspirators' communications and information related to their identity. *See* May 2, 2022, Gov. Status Rep., Dkt. 243 at 2–3. Those disclosures should serve as effective guideposts to enable the Defendants to identify the unindicted co-conspirators, should they really deem that information necessary to the preparation of a defense.

In short, court-ordered disclosure of the identities of unindicted co-conspirators is not necessary for the Defendants "to prepare for trial, to prevent surprise, [or] to interpose a plea of double jeopardy should [they] be prosecuted a second time." *Bortnovsky*, 820 F.2d at 574. Indeed, the Court suspects that this request is really just a thinly-disguised attempt prematurely to obtain the Government's witness list.

### C.  Identification of the HRA Accounts and False Communications Is Not Necessary

The Court declines to order the Government to identify the specific accounts from which Defendants fraudulently obtained property. To the extent that Defendants seek information regarding the Plan's investment and operating accounts, Brown Mem. at 13, the Government has already provided Defendants with "subpoena returns concerning the Plan's bank account information," Gov. Opp. at 42 n.22. Furthermore, the Government has clarified that the individual HRA's are "notional," and thus, there are no actual HRA's regarding which to provide bank information. *See id.*; *id.* at 5.

For similar reasons, the Court also declines to order the Government to particularize Defendants' allegedly false communications. "Courts have routinely denied requests for bills of

particulars concerning the 'wheres, whens and with whoms' of the crime" because "[t]he purpose of a bill of particulars is not to compel disclosure about the . . . particular acts in which a defendant allegedly participated, or for which he is being held responsible." *Bonventre*, 2013 WL 2303726, at *6 (collecting cases) (denying request to identify allegedly false records in a large-scale fraud committed over several years).[7]  This is true even where discovery is voluminous and spans multiple years.  *See id.*; *see also United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016) (volume of discovery does not, by itself, warrant a bill of particulars).[8]

To the extent that the Defendants have concerns regarding their ability adequately to prepare for trial in light of the volume of discovery, the Court encourages the parties to discuss a date for the early disclosure of the Government's exhibit list.  *See Bonventre*, 646 F. App'x at 79 ("early identification of prosecution exhibits and the defendants to whom they pertained" may mitigate the challenges posed by voluminous discovery).

### D.  Defendants Have Been Provided Adequate Tools to Navigate the Discovery Materials

Although Defendants argue that the volume of discovery has impeded their ability to prepare for trial, *see* Brown Mem. at 3–4, the Court appointed a coordinating discovery attorney (CDA) to assist defense counsel with navigating what promised from the get-go to be voluminous discovery.  Order, Dkt. 134.  Although Defendants may not have been provided an index of all materials, *see* Brown Mem. at 4, the CDA has established a centralized, searchable

---

[7]	Defendants attempt to distinguish *United States v. Bonventre*, No. 10-CR-228, 2013 WL 2303726 (S.D.N.Y. May 28, 2013), on the grounds that the Government in *Bonventre* had more precisely detailed the alleged criminal conduct in the indictment and in the Government's opposition brief.  Brown Reply, Dkt. 640 at 9.  This argument "fails because such evidentiary detail is not the function of the bill of particulars."  *United States v. Bonventre*, 646 F. App'x 73, 79 (2d Cir. 2016).

[8]	The additional cases relied upon by Defendants are inapposite.  As an initial matter, two of the cases dealt with requests for information that the Government had *already* agreed to provide.  *See* Brown Mem. at 13 (citing *United States v. Solnin*, 81 F. Supp. 3d 193, 208–09 (E.D.N.Y 2015); *United States v. Crisona*, 271 F. Supp. 150, 156 (S.D.N.Y. 1967)).

database for all defense counsel that continues to be updated with any additional discovery

productions, *see* Dec. 8, 2022, Ex Parte CDA Rep. at 2.  The Court has not received a single

complaint from Defense counsel regarding the availability of discovery or the CDA's willingness

to assist in effectively navigating the discovery materials.  Moreover, the Government has

directed Defendants to specific materials when requested.  Gov. Opp. at 40; *id.* at 40 n.19.   This

is all that the Government is required to do.  *See United States v. Percoco*, No. 16-CR-776, 2017

WL 6314146, at *21 (S.D.N.Y. Dec. 11, 2017) ("[T]he Government's discovery production,

although voluminous, has been accompanied by additional guidance that, in conjunction with the

detail in the Indictment . . . allows the Defendants to conduct a focused review of the

production.").

> This case has been pending for more than a year and the Indictment contains extensive

detail regarding the charged scheme.  The Government timely produced discovery and the

defense has had the benefit of a CDA.  Under all of these circumstances, a bill of particulars is

simply not necessary.

## IV.    The Government Must Comply with its *Brady* Obligations

> Defendants argue that the Government has not adequately produced materials from the

Plan and accordingly seek to compel the disclosure of materials related to the Plan pursuant to

*Brady v. Maryland*, 373 U.S. 83 (1963).  *See* Brown Mem. at 5.  The Court reminds the

Government that, pursuant to *Brady v. Maryland*, "[t]he prosecution has a constitutional duty to

disclose evidence favorable to an accused when such evidence is material to guilt or

punishment." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001) (citing *Brady v.

Maryland,* 373 U.S. at 87).  The Government must disclose such material when it is reasonably

probable that the outcome of a trial in which the evidence had been disclosed would differ from

one in which it had not been.  *Id*. at 142.  However, "as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  *Id*. at 144.

Defendants take issue with the fact that the Government has not produced notes from its meetings with Plan counsel, Brown Mem. at 22, although they acknowledge that the Government has disclosed statements made by Plan counsel during these meetings, *see id*.; *id*. at 7. Defendants have made no showing that the meeting notes contain information "that, if suppressed, would undermine the confidence in the outcome of a trial" or "could be used to impeach a key government witness."  *Coppa*, 267 F.3d at 140 (internal quotations omitted).

In all events, the Government has been reminded of its *Brady* obligations and has confirmed that it will comply.  The Court sees no reason or justification for ordering them to do that which they are already obligated to do — at least in the absence of any showing that they have not produced any exculpatory evidence of which they are aware.

## V.       The Motion to Review Grand Jury Transcripts Is Denied

Grand jury proceedings "shall generally remain secret."  *In re Petition of Craig*, 131 F.3d 99, 101 (2d Cir. 1997) (quoting *In re Biaggi*, 478 F.2d 489, 491 (2d Cir. 1973)).  Courts may, however, direct the disclosure of information regarding the grand jury proceedings "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  Fed. R. Crim. P. 6(e)(3)(E)(ii).  A defendant seeking disclosure of grand jury materials must demonstrate a "particularized need that outweighs the presumption of secrecy."  *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978) (cleaned up). "Speculation and surmise as to what occurred before the grand jury is not a substitute for fact."  *United States v. Shaw*, No. 06-CR-41, 2007 WL 4208365, at *6 (S.D.N.Y. Nov. 20,

2007) (quoting *United States v. Wilson*, 565 F. Supp. 1416, 1436 (S.D.N.Y. 1983)).  Where the proceedings have concluded, the public interest in maintaining the secrecy of grand jury records is reduced, but it is not eliminated.  *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979); *United States v. Sobotka*, 623 F.2d 764, 767 (2d Cir. 1980) ("We conclude that while the necessity here be less compelling in view of the termination of the grand jury, nonetheless some necessity need be shown by the party seeking disclosure.").

Defendants' speculations fall far short of the "concrete allegations of Government misconduct" necessary for the Court to order review of the grand jury materials.  *United States v. Goff*, No. 15-CR-616, 2016 WL 3264129, at *4 (S.D.N.Y. June 13, 2016) (quoting *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994)).  Defendants primarily rely on the suggestion that "the government's *Brady* disclosures and unclear case theory raise serious questions about what the government told the grand jury to secure the indictments in this case."  Brown Mem. at 24. While Defendants also argue that the Government misled the grand jury by stating that "the Plan had informed the government that it took no position on its status as a victim in the case," Brown Reply, Dkt. 640 at 15 (cleaned up), the Government maintains that statement was accurate and the grand jury was not misled, Gov. Opp. at 43–44.

Because Defendants have failed to establish a specific factual basis that compels the court to "dismiss an indictment for prosecutorial misconduct [because] the grand jury was misled or misinformed," *United States v. Brito*, 907 F.2d 392, 394 (2d Cir. 1990) (citations omitted), their motion to inspect the grand jury transcripts is denied.

## CONCLUSION

For the reasons stated above, the Defendants' pretrial motions are DENIED.  The Clerk

of Court is respectfully directed to terminate the open motions at docket entries 543, 546, 549

and 601.

**SO ORDERED.**

Date:  **December 12, 2022**
      **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**